# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETT

| | |
|---|---|
| MARGARET VALERIO and<br>JOHN VALERIO,<br>　　　　Plaintiffs<br><br>v.<br><br><br>U.S. BANK, N.A., as Trustee for MASTR<br>Asset Backed Securities Trust, 2006-FRE2,<br>and<br>WELLS FARGO BANK, N.A.,<br>d/b/a America's Servicing Company,<br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action 10-10529-NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF JOHN VALERIO IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

I, John Valerio, hereby depose and state on oath:

1. My name is John Valerio. I am a plaintiff in this action along with my mother, Margaret Valerio. I make this affidavit on personal knowledge.

2. The home in which I reside at 105 Ledge Road, Seekonk, Massachusetts, was built by my uncle in the mid-1960s and has been owned by family members continuously since that time. My mother and father purchased the home in 1989. I lived in the home from 1989-1999, and then returned to live there in 2005 following the death of my father.

3. In December, 2005, my mother and I refinanced the property with Fremont Investment & Loan Co. We obtained a loan which had an initial rate which was fixed for the first two years. Our intent was to sell the property during that two-year period.

However, due to the collapse of the housing market we were unable to sell the property. When the interest rate on the loan adjusted in 2008, it became difficult for us to make the payments and we eventually fell behind.

4. In February, 2008, we began to explore a modification of the loan with the servicer, America's Servicing Company (ASC). We submitted documents as requested to ASC throughout 2008. However, by January, 2009, we had still not received a response, so I contacted ASC to learn the status of the modification, only to be told that ASC believed we were no longer interested, which was completely false, as we had done nothing to cause such a belief.

5. Throughout the early months of 2009 I pursued a loan modification with ASC. I sent ASC all documents which they requested for the modification, including paystubs, budget worksheet, and a hardship letter. After forwarding various materials at different times in response to ASC's requests, I was not contacted by ASC. Instead, I was compelled to contact ASC myself, and was told either that ASC did not receive all the documents, or that the documents needed to be resubmitted, or that there were new requirements (such as signing each document). During one conversation, a male representative of ASC twice assured me that the documentation was complete and that a decision was pending. However, two weeks later I was informed by a female ASC representative that the file was not complete and we must re-submit all documents.

6. In March, 2009, we received foreclosure notices from Harmon Law Offices indicating an auction date of April 2, 2009. I promptly called ASC and was told that this was "standard practice" and that the sale would not go forward so long as we were working on the modification. The foreclosure sale was in fact postponed several times.

7. In early July, 2009, we received a loan modification package from ASC. True copies of ASC's letter and agreement are attached hereto as exhibit A. I promptly called ASC to confirm the terms and to also report that we did not yet have the entire down payment of $9,195.31. The gentleman with whom I spoke stated that we should sign and return the modification documents anyway and that ASC would get back to us regarding the payment. Per these instructions, we immediately signed the modification documents and returned them to ASC in their prepaid envelope.

8. In the first week of August, 2009, we received a second loan modification package from ASC which was an exact duplicate of the first one. Then, a few days later, we received a letter from Harmon Law Offices stating that our home had been sold at a foreclosure auction. This was the first indication of any kind that a foreclosure sale had taken place. I immediately called ASC. The woman with whom I spoke stated that the modification office was aware of the foreclosure and they had already started working to have it reversed. I was also told this could take several weeks and that we were still in "modification" mode.

9. During the third week of August, 2009, we were contacted by Westcott Properties, a real estate broker, who stated that the foreclosure sale was final and not being reversed. I immediately called ASC, which confirmed this new information. We learned that the purchaser at the foreclosure sale was U.S. Bank, N.A., the purported holder of the loan.

10. In November, 2009, my mother and I appeared for a summary process hearing in Fall River. Based on our understanding from our summary process attorney that ASC's conduct did not constitute grounds to defeat the Bank's claim for possession, because our attorney indicated she could not pursue the matter further, and because the Bank had

indicated it was interested in selling the property back to us, we reluctantly signed an agreement to vacate the property by February 1, 2010. The case was scheduled for further review on February 9, 2010.

11. We obtained a pre-approval letter from Eagle Nationwide Mortgage and submitted an offer to the broker, along with the pre-approval letter and evidence of a down payment. Both my mother and I are gainfully employed, and have been so throughout the course of the above events. I am employed as a technological consultant by a local college, and my mother is employed as a medical technician.

12. On February 8, 2009, one day prior to the scheduled court review, we were informed that the Bank had rejected our offer. No reason for the rejection was given.

13. Our understanding from our summary process attorney is that on February 9, 2010, defendants' attorney requested that the Court issue an execution for possession of the property, and that this will occur as early as February 19, 2010.

14. My mother and I do not have another place to live or to store our belongings in the event we are forcibly evicted from the property.

15. Had we not been misled us into believing that the foreclosure sale was not going forward in August, 2009, a modification likely would have been consummated, or if not, one or both of us would have filed a bankruptcy petition or other action to stop the sale, which would then have provided us with time to either finalize a modification or an opportunity to cure the mortgage arrearage through a chapter 13 plan.

16. At no time have we received any information or documentation from either defendant indicating that U.S. Bank was ever the holder of the promissory note which we executed to Fremont in 2006.

Signed under the pains and penalties of perjury, this 13ᵗʰ day of May, 2010.

_____
John Valerio

5

## Certificate of Service

On May 18, 2010, copies of the foregoing were served via electronic mail through the Court's ECF system on all registered participants, and via first class mail, postage prepaid, on all parties and interested persons listed as non-registered participants.

/s/*Kenneth D. Quat*