**United States District Court**
**District of Massachusetts**

```
_____ )
MARGARET VALERIO and JOHN       )
VALERIO,                        )
        Plaintiffs,             )
                                )
        v.                      )    Civil Action No.
                                )    10-10529-NMG
U.S. BANK, N.A. AS TRUSTEE FOR  )
MASTR ASSET BACKED SECURITIES   )
TRUST, 2006-FRE2 and WELLS FARGO)
BANK, N.A. D/B/A AMERICA'S      )
SERVICING COMPANY,              )
        Defendants.             )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Margaret Valerio ("Margaret") and John Valerio ("John") (together, "the Valerios") brought suit against defendants U.S. Bank, N.A. as Trustee for MASTR Asset Backed Securities Trust, 2006-FRE2 ("U.S. Bank") and Wells Fargo Bank, N.A., d/b/a America's Servicing Company ("ASC") for 1) wrongful foreclosure, 2) intentional misrepresentation, 3) negligent misrepresentation and 4) negligence. Before the Court is plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunction.

## I.  Background

### A.  Factual Background

This dispute arises out of the aftermath of plaintiffs'

-1-

failure to keep up with their mortgage payments.  Margaret is John's mother and they live at 105 Ledge Road in Seekonk, Massachusetts.  In October, 2005, Margaret deeded that property to herself and John as joint tenants following her husband's death.  Two months later, Margaret and John refinanced in order to generate some money for living expenses.  The refinancing lender was Fremont Investment and Loan Company ("Fremont") and Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as Fremont's nominee and as the mortgagee.

The loan was in the amount of $393,000.  The note provided for a fixed rate of 7.75% for the first two years which would then be adjusted at six-month intervals thereafter.  Plaintiffs claim that they intended to sell the property within the first two years and thus avoid any rate changes.  Due to the collapse in the housing market, however, plaintiffs were unable to do so. The interest rate adjusted upward in late 2007 and, as a result, plaintiffs had difficulty making the payments.  According to the defendants, however, plaintiffs have been "in and out of default" since 2006.

In any event, as early as February, 2008, the parties began to discuss the possibility of a loan modification to remedy the situation and to make the payments more affordable.  The most recent attempt began in March, 2009.  On March 3, 2009, MERS assigned the mortgage to U.S. Bank with an effective date of

-2-

November 8, 2007.[1]  U.S. Bank then sent a notice of foreclosure
to the Valerios.  Because they had been discussing a
modification, plaintiffs were surprised by the notice, called ASC
and were apparently told that it was "standard practice" but that
the sale would be postponed while modification discussions
continued.  After some miscommunication over what documents were
required for that process, the foreclosure sale was in fact
postponed in April, 2009 and several times thereafter.

The parties finally came to an agreement regarding a
modification later that summer.  ASC sent the documents, dated
June 24, 2009, and plaintiffs signed them in July, 2009.  The
agreement provided that, _inter_ _alia_, plaintiffs' annual rate
would drop to 4.5% and plaintiffs would pay $9,195.31 up front to
be "applied toward the accrued delinquency".  The package also
included a "Notice of No Oral Agreements" which prohibited any
unwritten oral agreements between the parties.

The $9,000-plus initial payment requirement quickly led to
more problems.  According to the plaintiffs, they agreed to the
modification terms but told ASC that they would need more time to
come up with the payment.  Plaintiffs contend that an ASC
representative told them to sign and return the documents and
that someone would contact them later about the down payment.

---

[1]  The second defendant, ASC, services the mortgage for U.S.
Bank.

ASC disputes that account and instead claims that, because the roughly $9,000 was not paid as agreed, it proceeded to reschedule the foreclosure.  On August 4, 2009, U.S. Bank purchased the property at a foreclosure auction.

Notice of the sale "came as a total surprise" to the Valerios.  John called ASC and was allegedly told that the bank was working to have the sale reversed because plaintiffs were still in "modification mode".  The defendants again dispute that story and instead report that U.S. Bank was the new owner and thus was moving to gain possession of the property.

When plaintiffs refused to vacate, U.S. Bank began eviction proceedings in the Massachusetts Southeast Housing Court.  After plaintiffs contested the validity of the foreclosure, U.S. Bank moved for summary judgment.  Before the court decided the matter, however, the parties entered into an Agreement for Judgment in November, 2009.  Plaintiffs claim that they only signed the agreement because 1) their counsel told them that they had no grounds under which to challenge their eviction and 2) defendants told them that they would consider reselling the property to them.  The bank allegedly later told the plaintiffs that it was not interested in reselling to them.

In any event, that Agreement for Judgment contained at least two provisions relevant here.  First, it provided that plaintiffs could remain in the house rent-free until February 1, 2010.

-4-

Second, it stated that "[the Valerios] waive[] the right to appeal or to seek further stay of execution for possession".  The Valerios did not vacate the property as agreed.  In late January, 2010, they made a last-ditch offer to repurchase from U.S. Bank but the bank declined.  U.S. Bank therefore returned to the Housing Court and, on February 25, 2010, obtained an execution on the judgment for possession.  Plaintiffs subsequently brought this suit in an attempt to prevent the loss of their home.

**B.    Procedural History**

In March, 2010, Plaintiffs filed their complaint in the Massachusetts Superior Court Department for Bristol County. Defendants removed the case to this Court later that month.  On May 18, 2010, plaintiffs filed 1) a motion for leave to amend their complaint to add a claim under the Massachusetts Consumer Protection Act, M.G.L. c. 93A and 2) a motion for a temporary restraining order.  Defendants filed an opposition to the latter motion to which plaintiffs filed a reply with leave of court. The court held a motion hearing on June 2, 2010.

**II.  Analysis**

**A.    Legal Standard**

To obtain a temporary restraining order or a preliminary injunction, the plaintiff must demonstrate: 1) a substantial likelihood  of success on the merits, 2) a significant risk of irreparable harm if the injunction is withheld, 3) a favorable

balance of hardships, and 4) a fit (or lack of friction) between
the injunction and the public interest.  <u>Nieves-Márquez</u> v. <u>Puerto
Rico</u>, 353 F.3d 108, 120 (1st Cir. 2003)  (citation omitted).
Likelihood of success on the merits is the critical factor in the
analysis.  <u>Weaver</u> v. <u>Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993)
(citations omitted).

     **B.  Application**

     Plaintiffs move for a TRO (and, after the hearing, a
preliminary injunction) to prevent defendants from 1) evicting or
attempting to evict them from the subject property and 2) selling
or otherwise transferring the property.  The Court treats the
motion as one for a preliminary injunction in which plaintiffs
contend that they are likely to succeed on one or both of their
claims and that they will suffer irreparable harm absent such
relief.

     Plaintiffs first claim is that the foreclosure sale was
invalid and thus void because U.S. Bank was not entitled to
enforce the promissory note payable to Fremont.  Their argument
in support of that claim, however, reads more like an
investigatory inquiry than an affirmative showing required for
injunctive relief.  In general, the Valerios contend that there
is a "substantial question" about whether U.S. Bank was entitled
to enforce the promissory note at the time of foreclosure.
Citing treatises and law from other jurisdictions, plaintiffs

argue that 1) an assignment of a mortgage does not alone transfer ownership of the note and 2) both the note and the mortgage are necessary to foreclose.  Because the note is a negotiable instrument, moreover, possession is necessary to enforce it.

Here, plaintiffs maintain, it is "unlikely" that U.S. Bank acquired the right to enforce the note by August 4, 2009, the foreclosure date.  Specifically, plaintiffs argue that, because MERS never possessed or owned the note, the mortgage assignment from MERS to U.S. Bank could not have given U.S. Bank the right to enforce the note.  As such, there are "substantial questions" about U.S. Bank's possession and right to enforce the note.

Plaintiff's second claim is cursory.  They contend that at the time of the foreclosure sale, all parties agreed that the loan was in "modification mode" and defendants even told plaintiffs afterwards that they would try to reverse the sale. Plaintiffs then assert that courts have equitable discretion to order specific performance and that this Court would "be well within its equitable discretion to restore the parties to the positions they occupied prior to defendants' misconduct".

Defendants respond with several arguments.  First, defendants contend that the Agreement of Judgment should prohibit plaintiffs from claiming possession of the property and that res judicata, collateral estoppel and/or judicial estoppel should prevent re-litigation of issues settled in the Massachusetts

-7-

Housing Court proceedings.  Defendants cite to <u>Ishaq</u> v. <u>Wachovia Mortg., FSB</u>, No. 09-11422 (RGS), 2010 WL 1380386 (D. Mass. Apr. 2, 2010) in which the court held that a consent agreement signed in a summary process eviction action had claim preclusive effect over a later suit to forestall eviction.  Similarly, defendants contend, the Valerios signed an agreement to vacate the property and waived any right to further challenge possession.  They should not be able to backtrack on that agreement here.

Second, defendants dispute plaintiffs' argument about the right to enforce the promissory note.  They contend that the note is endorsed in blank, meaning whoever possesses it may enforce it, and that U.S. Bank is in possession of it.  Defendants do not confirm, however, that they possessed the note at the time of the foreclosure sale (the crux of plaintiffs' argument).  In any event, defendants continue, Massachusetts law does not require that the foreclosing entity produce the note in order to foreclose.

Third, defendants contend that 1) the foreclosure sale was valid, 2) they made no misrepresentations about being in "modification mode" and 3) plaintiffs failed to comply with the modification agreement by not paying roughly $9,000 up front and, accordingly, the bank foreclosed.  Defendants assert that plaintiffs' unsubstantiated claim that ASC represented to them that the down payment could be dealt with at some later date is

false.  In any event, defendants maintain that, even if
plaintiffs' claim were true, it could not affect the result
because 1) the parties signed a Notice of No Oral Agreements
prohibiting any oral agreements or modifications and 2) any such
oral agreement would be barred by the parole evidence rule and/or
the statute of frauds.

Plaintiffs' reply memorandum focuses on distancing
themselves from the Housing Court proceedings in which the
Agreement of Judgment was signed.  First, they contend that the
Housing Court did not have subject matter jurisdiction to
adjudicate the legality of the foreclosure and thus that action
cannot bar this one.  Its jurisdiction, plaintiffs maintain, is
focused on landlord-tenant disputes and minimum housing
standards, which this case is not.  Second, plaintiffs argue that
claim preclusion does not apply because "the issue of U.S. Bank's
authority to enforce the promissory note was not raised before
the Housing Court".  Plaintiffs also distinguish Ishaq and
conclude by reiterating that U.S. Bank still has not claimed that
it possessed the note at any point during the foreclosure
proceedings and thus had no right to enforce that note.

The Court will deny plaintiffs' motion because they have not
shown a likelihood of success on the merits on either of their
claims.  With respect to the first (U.S. Bank's right to enforce
the note at the foreclosure), plaintiffs' position lacks support.

-9-

The Massachusetts statute governing foreclosure sales is addressed to mortgagees, not note holders.  M.G.L. c. 244, § 14. Here, plaintiffs do not dispute that 1) MERS was the original nominee and mortgagee, 2) MERS assigned the mortgage to U.S. Bank prior to foreclosure and 3) U.S. Bank was therefore the mortgagee at the time of foreclosure.

Asked at oral argument for their best Massachusetts authority to demonstrate a likelihood of success on their claim that an undisputed mortgagee is nonetheless barred from foreclosing without affirmatively establishing the right to enforce the note, plaintiffs cited In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006) and First Nat'l Bank of Cape Cod v. N. Adams Hoosac Sav. Bank, 391 N.E.2d 689 (Mass. App. Ct. 1979). The first case is, at best, neutral and more likely contravenes their position.  MERS was there, as here, the nominee and mortgagee while the note was held by another entity.  There was no assignment but despite the fact that MERS did not itself hold the note, the court found that MERS had a right to foreclose. The court relied primarily on the statutory text and the fact that MERS was the mortgagee.  Huggins, 357 B.R. at 182-84.  The second case is inapposite because it has nothing to do with a foreclosure.  Cf. U.S. Bank Nat'l Ass'n v. Ibanez, Nos. 08-misc-384283, 08-misc-386755 (KCL), 2009 WL 3297551 (Mass. Land Ct. Oct. 14, 2009) (note holders who do not establish that they are

mortgagees, which is critical, cannot foreclose).

To be sure, defendants have cited no conclusive authority to the contrary, nor have they rebutted plaintiffs' contention that U.S. Bank did not possess the note at the time of the foreclosure (although they contend that they now possess it).  The burden of proof with respect to injunctive relief lies, however, with the moving party and the facts in this case do not persuade the Court that plaintiffs' ultimate success is likely in light of their inability to cite any determinative Massachusetts law in their favor.

An additional factor convinces the Court that injunctive relief is unwarranted.  Specifically, the parties and plaintiffs' counsel signed an agreement providing that plaintiffs 1) would vacate the premises and 2) waive any right to appeal or seek further stay of the execution for possession.  The Housing Court then executed a judgment upholding that agreement.  In order to effectuate the relief requested, therefore, this Court would effectively need to find that the agreement and judgment are unenforceable (at least during the pendency of this suit).

In support of such a proposition, plaintiffs simply contend that 1) the Housing Court lacked jurisdiction to adjudicate the legality of the foreclosure and 2) their claims are not barred under claim or issue preclusion.  Plaintiffs notably do not contend, however, that the Housing Court's judgment or the

Agreement for Judgment are therefore unenforceable and, in fact, explicitly declined to take such a position at oral argument. Thus, regardless of whether the Housing Court affirmatively adjudicated the legality of the foreclosure (or had the jurisdiction to do so), that Court entered a judgement in a summary process action upholding the parties' duly-executed agreement whereby plaintiffs agreed to vacate the property and U.S. Bank was entitled to obtain possession.  Without a persuasive argument to disregard or vacate that judgment, this Court finds that the Valerios have failed to establish a likelihood of success on the merits.

With respect to plaintiffs' second claim (misrepresentations regarding "modification mode"), defendants' response is sufficient.  In particular, the existence of the Notice of No Oral Agreements is enough to refute plaintiffs' argument that they are likely to succeed on a claim based upon alleged oral representations made over the phone.

Certainly, the potential harm of losing one's family home is great but likelihood of success on the merits is the more critical factor and in that regard, plaintiffs fall short.  Their motion will, therefore, be denied.

**ORDER**

In accordance with the foregoing, plaintiffs' motion for a temporary restraining order and a preliminary injunction (Docket No. 8) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 7, 2010